# In the United States Court of Federal Claims

No. 10-852C

(Filed Under Seal:  February 15, 2011)

Reissued:  March 1, 2011[1]

_____

| | |
|---|---|
| GLENN DEFENSE MARINE (ASIA) PTE, LTD, | * |
| | * |
| | *   Post-award bid protest; Cross-motions for |
| | *   judgment on the administrative record; |
| Plaintiff, | *   Standard of review; Single contract versus |
| | *   split award; FAR § 51.212-1(h) – multiple |
| | *   awards; "Lowest total price" evaluation |
| v. | *   clause; NAVSUP clause reserving right to |
| | *   award single contract; Treatment of extrinsic |
| THE UNITED STATES, | *   evidence; Evidence of subjective intent; RFP |
| | *   authorized split award; Relief denied. |
| Defendant. | * |
| | * |

_____

## OPINION

_____

*David S. Black*, Holland and Knight, LLP, McLean, VA, for plaintiff.

*Paul D. Oliver*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA, Judge:**

This post-award bid protest is before the court on the parties' cross-motions for judgment on the administrative record.  The Navy awarded plaintiff, Glenn Defense Marine (Asia), PTE,

_____

[1]  An unredacted version of this opinion was issued under seal on February 15, 2011. The parties were given an opportunity to propose redactions, but no such proposals were made. Nevertheless, the court has corrected minor typographical and drafting errors in the original opinion.

Ltd. (Glenn Defense or GDMA), a contract to provide husbanding services to ships docking in two ports in the Philippines.  Under the same solicitation, the Navy awarded a similar contract to one of plaintiff's competitors, covering two other ports in the Philippines.  Plaintiff contends that it should have received a single award for all four ports.  It asserts that the Navy deviated from the solicitation terms in making a split award.  Because the court finds that the solicitation, in fact, authorized multiple awards, it **DENIES** plaintiff's motion for judgment on the administrative record and **GRANTS** defendant's cross-motion.[2]

## I.    BACKGROUND

The administrative record in this case reveals the following:

On May 6, 2010, the United States Navy (the Navy) issued a Request for Proposals (RFP) No. N40345-10-R-0077, seeking a contractor to provide husbanding services for Navy ships in four ports in the Philippines.  The RFP contemplated the award of an indefinite-delivery, indefinite-quantity (IDIQ) performance-based service contract with a base period of twelve months and an option period of six months.  The RFP directed offerors to submit a technical proposal, past performance information, and a pricing schedule, among other documents.

### A.    The RFP

### 1.    Presolicitation Documents

Prior to issuing the RFP, the Navy drafted several presolicitation documents, describing the intended nature and details of the husbanding contract.  The contracting officer (CO) circulated these documents were circulated within the agency by the contracting officer (CO); they were not made available to the offerors until well after the awards.

On April 8, 2010, the CO issued the first of these documents, the Pre-Solicitation Strategy (PSS).  It stated that "[t]he Government will award a contract for Husbanding Services – Philippines to the responsible offeror who submits the lowest price, technically acceptable offer with acceptable or neutral past performance."  In describing the evaluation process, the PSS anticipated that "[t]echnically acceptable proposals with acceptable or neutral past performance will have the price portion of the proposal evaluated with the proposed contract being awarded to the lowest price (all items/all lots) proposal."  In the multiple awards section, the PSS explained that "[m]ultiple awards will not be made" for this IDIQ contract because "[a] single award would provide the customer with a seamless point of contact for port and force protection services."

On April 29, 2010, the CO completed the Source Selection Plan (SSP).  It stated that "[t]he Government will award one contract for husbanding services in Philippines. . . . to the responsible offeror who submits the lowest price, technically acceptable offer with acceptable or

---

[2]  Owing to the need for a quick decision, the court's recitation of the facts and law is necessarily brief.

neutral past performance."  It quoted a "Single Award For All Items" NAVSUP clause, which stated that "the Government reserved the right to make a single award . . . ."

On May 4, 2010, the CO finished the final version of the Department of Navy Acquisition Strategy (DONAS).  This document described the upcoming solicitation as a "follow-on requirement" of a contract "for husbanding services to support U.S. Navy ships during their visits to the Republic of the Philippines.  Four ports were covered by this requirement:  Manila, Puerto Princesa, Subic Bay and Cebu."  The DONAS anticipated that the U.S. Navy Fleet and Industry Supply Center (FISC) would "make a single award . . .[and t]he resultant contract will be a Firm Fixed Price Indefinite Delivery Indefinite Quantity type contract . . ."  Under a subsection entitled "1. Single Contract or Multiple Award Task Order Contract," the DONAS stated that "[t]he RFP will indicate the Government's intent to make a single award."

**2.     Proposal Requirements**

On May 6, 2010, FISC issued RFP No. N403450-10-R-0077.  The RFP was for an IDIQ contract in which "prices [were] firm-fixed-price per unit and [were] inclusive of ALL costs, . . ."  (Emphasis in original).  Husbanding services were defined as "provid[ing] all supplies and services required during a port visit," including trash and chemical liquids removal, fresh potable water, food delivery, transportation services, force protection supplies and services, and communications equipment, among other services.

The RFP's Performance Work Statement (PWS) further described the services to be provided under the contract.  It stated:

The contract is sub-divided into Lots.  Lots may be for individual ports or they may include several ports under one Lot.  For this contract, the following Lots apply:

- Lot 1 – Manila
- Lot 2 – Subic Bay
- Lot 3 – Puerto Princesa
- Lot 4 – Cebu

The contractor was "required to be able to simultaneously Husband eight (8) ships at once among the ports identified in the lots."  The PWS further indicated that "unit prices for all contract items . . . [were to] be inclusive of all necessary equipment, licensed operators, all liability insurance."  It went on to describe the services expected under the Contract Line Items (CLINs), and the corresponding requirements for each offeror's proposal.

Pricing proposals were to be based on Exhibit A of the RFP, which contained a separate spreadsheet for each lot, and listed each service or supply required under a line item subheading. Offerors were to "insert their proposed price for each CLIN and SUBCLIN items."  For each

item, a "Base Year Est[imated] Qty" was provided and the offeror was required to list the "Base Year Unit Price" and "Base Year Total Price."  The last spreadsheet in Exhibit A was as follows:

| LOT 1 – MANILA | LOT 2 – SUBIC BAY | LOT 3 – PUERTO PRINCESA | LOT 4 – CEBU | TOTAL |
|---|---|---|---|---|
| $ | $ | $ | $ | $ |

Price was to be evaluated based on this pricing/fee schedule and "in accordance with FAR [Federal Acquisition Regulations Chapter] 15."

The Navy was to make its award "to the responsible offeror who submits the lowest total price, technically acceptable offer with acceptable or neutral past performance."  The RFP incorporated by reference FAR § 52.212-1, "Instructions to Offerors-Commercial Items," which includes the following clause:

> (h) Multiple awards.  The Government may accept any item or group of items of an offer, unless the offeror qualifies the offer by specific limitations.  Unless otherwise provided in the Schedule, offers may not be submitted for quantities less than those specified.  The Government reserves the right to make an award on any item for a quantity less than the quantity offered, at the unit price offered, unless the offeror specifies otherwise in the offer.

FAR § 52.212-1.  The final paragraph of the RFP quoted the following NAVSUP clause:

> Single Award For All Items (JAN 1999) (NAVSUP): Due to the interrelationship of supplies and/or services to be provided hereunder, the Government reserves the right to make a single award to the offeror whose offer is considered in the best interest of the Government, price and other factors considered.  Therefore, offerors proposing less than the entire requirement may be determined to be unacceptable.

The RFP required all proposals to be submitted by June 11, 2010.

## B.    Proposals and the Evaluation Process

On June 11, 2010, the Navy received proposals from three contractors:  Glenn Defense; Inchcape Shipping Services (Inchcape); and Global Ship Management (Global).  After these proposals were received, the Navy determined that the RFP had underestimated the number of ship visits.  On July 28, 2010, the Navy amended the RFP to eliminate the six-month option period and to revise Exhibit A, the schedule of supplies and services.  On August 5, 2010, Glenn Defense, Inchcape, and Global all submitted revised proposals.  The Navy gave each offeror's technical proposal and past performance evaluation a rating of "acceptable."  The breakdown of pricing, as reflected in the offerors' pricing schedules, was as follows:

- 4 -

|          | Lot 1 – Manila | Lot 2 – Subic Bay | Lot 3 – Puerto Princesa | Lot 4 – Cebu | TOTAL |
|----------|----------------|-------------------|-------------------------|--------------|-------|
| GDMA     | $212,670.05    | $457,357.95       | $62,258.80              | $56,601.20   | $788,888.00 |
| Global   | $188,199.50    | $378,287.15       | $122,813.66             | $117,869.56  | $807,169.87 |
| Inchcape | $2,092,092.42  | $2,850,860.85     | $521,901.63             | $971,347.16  | $6,436,202.05 |

On August 12, 2010, the CO drafted a Business Clearance Memorandum (BCM) for Contract No. N40345-10-D-0006.  The BCM indicated that the contract was a "Single-Award IDIQ" for husbanding services, to be awarded pursuant to a "Lowest Price Technically Acceptable Source Selection Process."  The CO found that Glenn Defense was the "lowest price offeror," with Global's and Inchcape's prices being 2.317 and 715.85 percent higher, respectively.  He concluded that "Glenn Defense Marine submitted a technically acceptable proposal, obtained an 'acceptable' rating for their past performance, and is the lowest total price offeror."   Based on this information, the CO recommended that Glenn Defense be awarded the contract.  This draft was never signed.

On August 27, 2010, the CO drafted a final BCM for contract No. N40345-10-D-0007.  In the final BCM's background section, the CO stated that:

> Although [the NAVSUP] provision reserves the right to make a single award for supplies and/or services to be provided, it does not restrict the Contracting Officer from making multiple awards in accordance with FAR 52.212-1 where multiple awards are in the best interest of the Government.  While the interrelationship of supplies and/or services to be provided under the resulting husbanding contract are critical at the port visit and port location level (i.e., [a]ll services to be provided for a particular port visit or at a single port location must be coordinated by a single service provider), coordination of services provided among different lot locations specified in the solicitation is not critical.  Separate points of contact for provision of husbanding services at separate lot (port) locations maintains adequate clarity in the ordering process and does not introduce performance risk to the resulting contract.

He went on to observe that "[t]he solicitation included FAR 52.212-1, including its subparagraph (h), multiple awards, that authorizes the Government to accept any item or group of items of an offer unless the offeror qualifies the offer with specific limitations," adding that "[t]he proposals received from [the contractors] contain no qualifications to their offers to limit the Government from accepting less than the entirety of their offers."

This final BCM again commented that all three offerors received "acceptable" ratings for their technical proposals and past performance evaluations, and that Glenn Defense "is the apparent, overall lowest price offeror as a result of adequate price competition."  But, unlike in the draft BCM, the CO went on to state that "[a]fter examining the pricing distribution for each of the lots, the Contracting Officer also considered a split award, with one contract for lots 1 & 2 and another contract for lots 3 & 4, in order to achieve overall cost savings to the Government."  He summarized the results of this analysis in the following charts:

|  | **Glenn Defense** | **Global** | **Inchcape** |
|---|---|---|---|
| Lot 1 – Manila | $212,670.05 | $181,198.50 | $2,092,092.42 |
| Lot 2 – Subic Bay | $457,357.95 | $378,287.15 | $2,850,860.85 |
| TOTAL FOR ALL LOTS | $670,028.00 | $559,485.65 | $4,942,953.27 |
| Percent of Lowest Offeror | 119.76% | Lowest Offeror | 883.48% |

|  | **Glenn Defense** | **Global** | **Inchcape** |
|---|---|---|---|
| Lot 3 – Puerto Princesa | $62,258.80 | $122,813.66 | $521,901.63 |
| Lot 4 – Cebu | $56,601.20 | $117,869.56 | $971,347.16 |
| TOTAL FOR ALL LOTS | $118,860.00 | $240,683.22 | $1,493,248.79 |
| Percent of Lowest Offeror | Lowest Offeror | 202.49% | 1256.31% |

The CO noted that the Navy would save $110,524.44 in a split award, under which the CO would select the lowest bid for each lot. He, therefore, recommended that Global and Glenn Defense be awarded Lots 1 and 2 (Manila and Subic Bay) and Lots 3 and 4 (Puerta Princessa and Cebu), respectively.

On August 30, 2010, the CO sent a letter informing Glenn Defense that it had the "lowest price technically with an acceptable past performance and was therefore awarded Lot 3 and Lot 4 Contract No. N40345-10-D-0006." This letter also informed plaintiff that Global had been awarded Lots 1 and 2 for a total price of $559,485.65 under contract No. N40345-10-D-0007. On August 30, 2010, the CO sent a corresponding letter informing Global that it had the "lowest price technically acceptable with an acceptable past performance and was therefore awarded Lot 1 and Lot 2 of Contract No.N40345-10-D-0007." This letter also informed Global that Glenn Defense had been awarded Lots 3 and for a total price of $118,860.00 under contract No. N40345-10-D-0006.

### C.    Procedural History

On September 3, 2010, Glenn Defense filed a bid protest before the Government Accountability Office (GAO). On November 24, 2010, GAO denied the protest. *Glenn Defense Marine-Asia PTE, Ltd.*, 2010 C.P.D. ¶ 290 (2010).

On December 10, 2010, Glenn Defense filed its complaint with this court, claiming that the Navy's split award of the husbanding services contract between it and Global was contrary to the terms of the RFP. On December 17, 2010, Glenn Defense filed an application for a temporary restraining order, which, on December 23, 2010, the court denied. On January 4, 2011, plaintiff filed its motion for judgment on the administrative record. On January 14, 2011, defendant filed its cross-motion for judgment on the administrative record. Following the completion of briefing on the cross-motions, on February 8, 2011, oral argument was held on the parties' motions for judgment on the administrative record.

## II.   DISCUSSION

Before turning, in detail, to plaintiff's sole, substantive claim, we begin with common ground.

### A.   Standard of Review

The Federal Circuit, in *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005), instructed that courts must "distinguish . . . [a] judgment on the administrative record from a summary judgment requiring the absence of a genuine issue of material fact." *Bannum* teaches that two principles commonly associated with summary judgment motions – that the existence of a genuine issue of material fact precludes a grant of summary judgment and that inferences must be weighed in favor of the non-moving party – do not apply in deciding a motion for judgment on the administrative record. *Id*. at 1356. The existence of a question of fact thus neither precludes the granting of a motion for judgment on the administrative record nor requires this court to conduct a full blown evidentiary proceeding. *Id*.; *see also Int'l Outsourcing Servs. LLC v. United States*, 69 Fed. Cl. 40, 45-46 (2005). Rather, such questions must be resolved by reference to the administrative record, as properly supplemented – in the words of the Federal Circuit, "as if [the Court of Federal Claims] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1354; *see also NEQ, LLC v. United States*, 88 Fed. Cl. 38, 46 (2009); *Int'l Outsourcing*, 69 Fed. Cl. at 46; *Carlisle v. United States*, 66 Fed. Cl. 627, 631 (2005).

*Bannum*'s approach is well-suited to the limited nature of the review conducted in bid protests. In such cases, this court will enjoin defendant only where an agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see also* 28 U.S.C. § 1491(b)(4). By its very definition, this standard recognizes the possibility of a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. NRDC, Inc.*, 462 U.S. 87, 105 (1983); *see Software Testing Solutions, Inc. v. United States*, 58 Fed. Cl. 533, 538 (2003); *Gulf Group, Inc. v. United States*, 56 Fed. Cl. 391, 396 n.7 (2003). As the focus of this standard is more on the reasonableness of the agency's result than on its correctness, the court must restrain itself from examining information that was not available to the agency. Failing to do so, the Federal Circuit recently observed, risks converting arbitrary and capricious review into a subtle form of *de novo* review. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379-80 (Fed. Cir. 2009). At all events, this court will interfere with the government procurement process "only in extremely limited circumstances." *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983)).

The aggrieved bidder must demonstrate that the challenged agency decision was either irrational or involved a clear violation of applicable statutes and regulations. *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004), *aff'g*, 56 Fed. Cl. 377, 380 (2003); *see also ARINC Eng'g Servs., LLC v. United States*, 77 Fed. Cl. 196, 201 (2007). Moreover, "to prevail in a protest the protester must show not only a significant error in the

procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996). To demonstrate prejudice, "the protestor must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).[3] "Finally, because injunctive relief is relatively drastic in nature, a plaintiff must demonstrate that its right to such relief is clear." *NEQ*, 88 Fed. Cl. at 47; *see also Banknote Corp.*, 56 Fed. Cl. at 380-81; *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 566 (2000).

## B.      Did the RFP Authorize Split Awards?

The basic issue in this case is relatively straightforward – did the RFP authorize the Navy to make a split award here – or not? Plaintiff asserts that the RFP unambiguously indicates that the award will be made to a single offeror for all four ports. It argues that the Navy deviated from the RFP's terms when it made the split award. Defendant, however, contends that the RFP provided the Navy with an option – allowing it to make either an award to a single offeror or to split the award, depending on which was in the best interests of the Navy. Defendant argues that while the Navy originally intended to issue a single contract, it changed its mind – as it was permitted to do under the RFP – based on the CO's recognition that considerable savings could be realized by splitting the award. The latter approach, defendant asseverates, did not vary from the terms of the RFP.

"It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation." *Banknote Corp.*, 56 Fed. Cl. at 386; *see also NEQ*, 88 Fed. Cl. at 47; *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 207, *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004). This requirement is rooted in the Competition in Contracting Act (CICA) and the FAR, both of which indicate that an agency shall evaluate proposals and assess their qualities solely based on

---

[3] Federal Circuit cases indicate that this prejudice analysis comes in two varieties. The first is that described above – namely, the ultimate requirement that a protestor must show prejudice in order to merit relief. A second prejudice analysis is more in the nature of a preliminary standing inquiry. In this regard, the Federal Circuit has held that "because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *see also Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002); *Overstreet Elec. Co., Inc. v. United States*, 59 Fed. Cl. 99, 109 n.5 (2003). Cases construing this second variation on the prejudice inquiry have held that it requires merely a "viable allegation of agency wrong doing," with "'viability' turning on the reasonableness of the likelihood of prevailing on the prospective bid taking the protestor's allegations as true." *McKing Consulting Corp. v. United States*, 78 Fed. Cl. 715, 721 (2007); *see also 210 Earll, L.L.C. v. United States*, 77 Fed. Cl. 710, 719 (2006); *Textron, Inc. v. United State*s, 74 Fed. Cl. 277, 284-85 (2006). Because of the central nature of the allegation of error here, the court is convinced that plaintiff has met this preliminary "standing" threshold – and defendant does not contend otherwise.

the factors and subfactors specified in the solicitation. *See* 10 U.S.C. §§ 2305(a)(2)(A)-(3)(A); 48 C.F.R. §§ 15.303(b), 15.305(a); *see also NEQ*, 88 Fed. Cl. at 47; *ManTech Telecomms. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 66 (2001), *aff'd*, 30 Fed. Appx. 995 (Fed. Cir. 2002).  If the agency changes any evaluation criterion after issuing the solicitation, it must amend the solicitation and notify the offerors of the changed requirement. *See* 48 C.F.R. § 15.206(a); *see also id*. § 15.206(d); *Elec. Data Sys., LLC v. United States*, 93 Fed. Cl. 416, 430 (2010); *SP Sys., Inc. v. United States*, 86 Fed. Cl. 1, 18 (2009).  Consistent with these precepts, in a case such as this, a protestor must show that:  (i) the procuring agency used a significantly different basis in evaluating the proposal than was disclosed; and (ii) the protestor was prejudiced as a result – that it had a substantial chance to receive the contract award but for that error. *Elec. Data Sys.*, 93 Fed. Cl. at 430; *Banknote Corp.*, 56 Fed. Cl. at 386-87.[4]

So what does the RFP here disclose about the number of contracts to be awarded?  We begin, as we must, with the RFP's plain language. *Banknote Corp.*, 365 F.3d at 1353; *see also Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc).  "If the provisions of the [RFP] are clear and unambiguous," the Federal Circuit has stated, "they must be given their plain and ordinary meaning; we may not resort to extrinsic evidence to interpret them." *Banknote Corp.*, 365 F.3d at 1353.  In addition, a RFP should be interpreted in a manner that harmonizes and gives reasonable meaning to all its parts. *Id*.  "Provisions of a contract must be so construed as to effectuate its spirit and purpose." *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *see also Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999).  An interpretation that gives a reasonable meaning to all provisions of a solicitation thus is preferable to one that leaves a portion of it useless or inexplicable. *Gould, Inc.*, 935 F.2d at 1274; *see also Fulcra Worldwide, LLC v. United States*, 2011 WL 286250, at *15 (Fed. Cl. Jan. 31, 2011); *Linc Gov't Servs., LLC v. United States*, 2010 WL 4484021, at *32 (Fed. Cl. Nov. 5, 2010).  Context thus defines the meaning of any given term or provision in a government solicitation. *Linc Gov't Servs.*, 2010 WL 4484021, at *32 (citing *Metric Constructors,* 169 F.3d at 752); *see also Fulcra Worldwide,* 2011 WL 286250, at *15.

In the court's view, the plain language of the RFP demonstrates that defendant reserved the right to award either a single contract covering all four ports, or multiple contracts covering one to three ports.  In particular, the RFP included the clause found at FAR § 52.212-1, Instructions to Offerors – Commercial Items, which provides in relevant part:

> (h)  Multiple awards.  The Government may accept any item or group of items of an offer, unless the offeror qualifies the offer by specific limitation.  Unless provided otherwise in the Schedule, offers may not be submitted for quantities less than those specified.  The Government reserves the right to make an award on any item for a quantity less than the quantity offered, at the unit prices offered, unless the offeror specifies otherwise.

---

[4] *See also NEQ*, 88 Fed. Cl. at 48 n.8 (citing cases); *Bean Stuyvesant, LLC v. United States*, 48 Fed. Cl. 303, 321 (2000); *Dubinsky v. United States*, 43 Fed. Cl. 243, 266 (1999).

Numerous cases have held that this clause authorizes an agency to award either a single contract or multiple contracts.

Principal among these decisions is *Emeco Indus., Inc. v. United States*, 485 F.2d 652 (Ct. Cl. 1973). There, the solicitation sought a contractor to manufacture 31,896 boxes. *Id.* at 654. Upon receiving an award to manufacture 2,713 boxes, the plaintiff assumed that it had won the contract and that this was the first of many box orders. *Id.* Later, however, it found that another contractor had received a contract to manufacture the remaining 29,183 boxes. *Id.* The plaintiff filed suit in the Court of Claims, asserting that the solicitation, as written, obliged the defendant to purchase the entire quantity of boxes from a single contractor and did not authorize a split award. This court's predecessor rejected this argument, finding that "[a] careful reading" of the clause quoted above permitted a split award. *Id.* at 655. It focused, in particular, on that portion of the clause in which the Government "'reserves the right to make an award . . . for a quantity less than the quantity offered . . . unless the offeror specified otherwise in his offer." It noted that the "plaintiff placed no conditions on its bid," and that, as a result, the award of only 2,713 boxes, rather than the entire quantity of 31,896, was proper. *Id.* A phalanx of cases has construed the multiple awards clause of FAR § 52.212-1 (or like-worded predecessor provisions) to similar effect.[5]

---

[5]   *See, e.g., E.W. Bliss Co.*, 94-1 C.P.D. ¶ 280 (1994); *HFS Inc.*, 92-1 C.P.D. ¶ 160 (1992) (noting that under this clause "separate awards to different firms which are low on individual items, rather than an aggregate award, are clearly proper"); *Int'l Bus. Mach.*, 88-1 B.C.A. ¶ 20,512 (1988); *Eng'g Research, Inc.*, 77-1 C.P.D. ¶ 431 (1977) ("Our office consistently has read [this clause] to require award on the basis of the most favorable overall cost to the government. . . . Where multiple awards are not prohibited by the solicitation and result in the lowest overall cost to the government, separate awards to different bidders who are low as to the item each is awarded, rather than an aggregate award to single bidder, is proper."); *Unitron Eng'g Co.*, 75-2 C.P.D. ¶ 240 (1975); *Emeco Indus. Inc.*, 1971 WL 5783 (Comp. Gen. Apr. 19, 1971) ("This paragraph has been interpreted by our office as permitting awards to be made to one or more bidders, depending upon which is more in the interest of the government."); *see also Kings Point Indus., Inc.*, 87-2 C.P.D. ¶ 587 (1987). Cases have reached this same conclusion even where, as here, the RFP made singular, rather than plural, references to words like "contract." *See Action Mobile Transp., Inc.*, 97-1 C.P.D. ¶ 132 (1997) ("Where . . . [the RFP] contains an award clause permitting partial awards, the use of singular terminology in the solicitation does not preclude multiple awards; rather, clear language is required to override the award clause's explicit provision for award by item."); *Connie Hall Co.*, 86-2 C.P.D. ¶ 52 (1986) ("the use of [ ] singular terms to describe the award cannot alter the right of the [agency] to make multiple awards"); *Granite State Mach. Co., Inc.*, 80-2 C.P.D. ¶ 396 (1980) ("The use of certain terms in the singular, through implication, cannot alter the specified right of the government to make multiple awards."); *see also* Restatement (Second) of Contracts § 202, cmt. d (1981) (in interpreting a contract as a whole, "singular may be treated as plural or plural as singular"). And still other decisions have held that FAR § 52.212-1(h) authorizes multiple awards even where a solicitation contained language to the effect that the agency "anticipated that there will be one award resulting from this solicitation." *See Rocky Mountain Trading Co.*, 87-2 B.C.A. ¶ 19,725

Plaintiff attempts to bring this case outside this line of authority by citing several cases that have held that the mere presence of FAR § 52.212-1(h) does not authorize a split award where a solicitation otherwise anticipates an aggregate award. *See Int'l Code Servs., Inc.*, 97-1 C.P.D. ¶ 216 (1997); *Knoxville Glove Co.*, 93-1 C.P.D. ¶ 339 (1993); *Gen. Aero Prods. Corp.*, 78-2 C.P.D. ¶ 70 (1978). It bravely insists that the latter is the case here, centering its claim on the evaluation mechanism in the RFP. In this regard, plaintiff trumpets that portion of the RFP which states that "the Government will award a contract resulting from the solicitation to the responsible offeror who submits the lowest total price, technically acceptable offer with acceptable or neutral past performance." It asserts that there can only be one "lowest total price" under the RFP, a price that must necessarily correspond to all four of the ports in question.

But, this interpretation of the "total price" clause makes no sense. For one thing, it would render the multiple awards clause an absurdity, because the Navy could not sensibly make an award under that clause of "less than the quantity offered," *i.e.*, an award for one to three ports, if that decision had to be based upon the "total price" for all four ports. Any reliance on the latter approach would almost certainly run afoul of the CICA and FAR provisions that require agencies to include price as an evaluation factor, all of which, one would hope, require the agency to evaluate the price of what it is buying, as opposed to the "price of tea in China."[6] *See* 41 U.S.C. § 253a(c)(1)(B); FAR § 15.304(c)(1); *see also Serco, Inc. v. United States*, 81 Fed. Cl. 463, 491 (2008). It makes far more sense to read the "total price" clause as authorizing multiple awards, provided each award meets the evaluation criteria – that is, the award must go to the otherwise qualified contractor which submits the lowest total price for the lot in question.[7] This approach, unlike plaintiff's strained reading, preserves the integrity of both the "multiple awards" and "total price" provisions, a result consistent with familiar canons of construction. *See Gould*, 935 F.2d at 1274 ("an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." (quoting *Arizona v. United States*, 575 F.2d 855, 863 (1978))); *see also Spectrum Sciences & Software,*

---

(1987); *Carolina Parachute Co.*, 80-2 C.P.D. ¶ 79 (1980) (same result where solicitation stated that "award will generally be made to a single offeror on each entire lot").

[6] In the Nineteenth century, the market price for tea in England was the highest when the first ship laden with the newly harvested tea came into port. So, for ship owners it was vitally important to have their ship arrive first. The difference in prices from the first load to the later ones, indeed, was so great that it became increasingly irrelevant what price was originally paid for the tea in China, leading to the phrase quoted above. *See* http://en.wikipedia.org/wiki/Price_of_tea_in_China (as viewed on Feb. 15, 2011).

[7] Contrary to plaintiff's claims, the court sees no conflict between its interpretation of these provisions and other parts of the RFP that require contractors to make offers covering all four ports. It was within the Navy's prerogative to require the latter even if it intended to make a split award. And, indeed, the pricing sheets employed in the RFP readily allowed the Navy to determine each contractor's offering price on a port-by-port basis.

*Inc. v. United States*, 84 Fed. Cl. 716, 735 (2008).  Indeed, in analogous circumstances, several cases have held that the presence of "total price" clause in a RFP or solicitation does not prevent an agency from awarding multiple contracts.  *See Gichner Mobile Sys.*, 85-1 C.P.D. ¶ 534 (1985); *Granite State Mach.*, 80-2 C.P.D. ¶ 396; *see also SKS Group, Ltd.*, 82-1 C.P.D. ¶ 574 (1982).[8]

That the Navy had the option of awarding more than one contract accords with two other provisions in the RFP.  The first of these is found in the PWS, which stated that "[t]he contract is sub-divided into Lots.  Lots may be for individual ports or they may include several ports under one Lot."  This language, which provides for the variable grouping of ports, makes sense only if the Navy could award more than one contract under the RFP, *i.e.*, could "sub-divide[]" the work; it makes utterly no sense if the Navy could award only a single contract.  That the RFP envisioned the former, and not the latter situation, is suggested by yet another clause in the RFP, *to wit* –

SINGLE AWARD FOR ALL ITEMS (JAN 1999) (NAVSUP)

Due to the interrelationship of supplies and/or services to be provided hereunder, the Government reserves the right to make a single award to the offeror whose offer is considered in the best interest of the Government, price and other factors considered.  Therefore, offerors proposing less than the entire effort specified herein may be determined to be unacceptable.

Of course, it would be passing odd to "reserve the right to make a single award" if, as plaintiff contends, the RFP only authorized the agency to make a single award.  Given the common understanding of the word "reserve," it makes eminent sense to read this provision as preserving the Navy's option to award a single contract in the face of other RFP provisions authorizing the award of multiple contracts.[9]  Viewing the RFP as affording the Navy this flexibility accords

___

[8] Grasping at straws, plaintiff tries to give effect to both the "multiple award" and "total price" clauses by suggesting that the Navy was authorized to award a contract for less than all four ports, provided it did not award a second contract.  One problem with this scenario – and not a minor one at that – is that it does not involve "multiple awards."  Aside from this, there is still the prospect, under plaintiff's theory, that an award for less than all four ports would be made based upon the price offered for all four ports – again, a *non sequitur*.  And it should not be overlooked that under this "single contract for less than the whole" scenario, the Navy would have had to look elsewhere to provide husbanding services in the ports for which a contract was not awarded – a result that one cannot reasonably assume the agency intended going into this procurement, particularly given the essential nature of the services in question.

[9] *See* The American Heritage Dictionary 1483 (4th ed. 2000) ("reserve": "[t]o keep or secure for oneself; retain"); *see also Gerlach Livestock Co. v. United States*, 76 F. Supp. 87, 93 (Ct. Cl.), *aff'd on other grounds*, 339 U.S. 725 (1950) (using this definition); *Comm'r of Internal Revenue v. Strong Mfg. Co.*, 124 F.2d 360, 363 (6th Cir. 1941) , *rev'd on other grounds*, *sub nom.*, *Helvering v. Ohio Leather Co.*, 317 U.S. 102 (1942) (same).

with Congress' expectation, manifested in the CICA, that agencies will award contracts to "the responsible source whose proposal is most advantageous to the United States, considering only cost or price and the other factors included in the solicitation." 10 U.S.C. § 2305(b)(4)(C); *see also Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 959 (Fed. Cir. 1993); *Friend v. Lee*, 221 F.2d 96, 100 (D.C. Cir. 1955). Various cases have interpreted this legislative command to mean that "if multiple awards will be most advantageous to the Government, and they are not prohibited by the solicitation, multiple awards should be made." *Rocky Mountain Trading Co.*, 87-2 B.C.A. ¶ 19,725.[10] Here, of course, the multiple awards were advantageous to the Navy in yielding the lowest cost for the husbanding services in question. And those awards were not prohibited by the RFP.[11]

In a last ditch effort to prevail, plaintiff points to extrinsic evidence that it claims supports its view of the RFP. Before considering the specifics of its claims, it is worth discussing, in more general terms, the probative value of such evidence.

It is, of course, axiomatic that extrinsic evidence is relevant only where a contract is "ambiguous" – that is, "if its language is susceptible to more than one reasonable interpretation." *Ace Constructors, Inc. v. United States*, 499 F.3d 1357, 1361 (Fed. Cir. 2007); *see also Banknote Corp.*, 365 F.3d at 1353. "[E]xtrinsic evidence . . . should not be used to introduce an ambiguity where none exists." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996); *see also Interwest Constr. v. Brown*, 29 F.3d 611, 615 (Fed. Cir. 1994). These rules have been applied to the interpretation of solicitations and requests for proposal. *See Banknote Corp.*, 365 F.3d at 1353; *Grumman Data Sys. Inc. v. United States*, 88 F.3d 990, 997 (Fed. Cir. 1996); *see also Armour of Am. v. United States*, 2011 WL 86475, at *10 (Fed. Cl. Jan. 10, 2011); *M.G. Constr., Inc. v. United States*, 67 Fed. Cl. 176, 182-83 (2005).

To be sure, the extrinsic evidence cited by plaintiff is a bit unusual in that it involves internal Navy documents prepared by the CO that were not shared with the offerors in advance of the awards. These documents, kept by the Navy *in pectore*, did not contribute to the offerors'

---

[10] *See also Compuadd Corp. v. Dep't of Air Force*, 1992 WL 442353 (GSBCA Dec. 23, 1992); *Int'l Bus. Mach. Corp.*, 88-1 B.C.A. ¶ 20,512 (1988) ("In compliance with the statute, the agency consequently must make multiple awards if doing so will be most advantageous.").

[11] Plaintiff makes much of the fact that the Navy's instructions to contracting officers indicate that the NAVSUP provision quoted above should be employed "when award will be made to a single offeror for all contract line items." It further notes that the same instructions provide an alternative clause to be used "when award will be made to a single offeror on each entire lot," but that this alternative clause was not employed by the Navy. The court agrees that these instructions raise some questions. But, as with the other extrinsic evidence discussed below, the instructions cannot serve to create ambiguity in the RFP where there is none. And, notably, in its reply brief, plaintiff admitted that "the text of the Single Award Clause, by itself, [does not] preclude the Agency from making multiple awards." If there is a conflict between what the instructions say and what the clause actually inserted in the RFP provides, the court declines to give effect to the former at the expense of the latter.

pre-award understanding of the RFP as would, for example, information exchanged during negotiations.  Nevertheless, various cases involving general contract interpretation have held that where a contract is ambiguous, evidence of a party's subjective intent may be considered.[12] Although courts in this circuit have been hesitant to give an individual contracting party's subjective intent any effect,  *see City of Oxnard v. United States*, 851 F.2d 344, 347 (Fed. Cir. 1988); *Westinghouse Elec. Corp. v. United States*, 41 Fed. Cl. 229, 234 (1998), they have, from time to time, considered such extrinsic evidence in government contract cases in which the controlling contractual documents were ambiguous.  *See Applied Cos. v. United States*, 37 Fed. Cl. 749, 759 (1997), *aff'd*, 144 F.3d 1470 (Fed. Cir. 1998); *KMS Fusion, Inc. v. United States*, 36 Fed. Cl. 68, 81-82 (1996), *aff'd*, 108 F.3d 1393 (Fed. Cir. 1997) (per curiam); *see also ACE-Fed. Reporters, Inc. v. Gen. Serv. Admin.*, 02-2 B.C.A. ¶ 31,913 (2002).  Defendant, moreover, concedes that if the RFP in question is ambiguous, the court may consider pre-solicitation documents to resolve that ambiguity.[13]

But, all this begs an important question – are the critical provisions of the RFP here ambiguous?  After careful consideration, the court ultimately has come to the conclusion that they are not – that the interpretation described above is the only one which reasonably gives effect to all the words of all the provisions of the RFP.  *See Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (a contract term is "ambiguous," if it "is susceptible to more than one reasonable interpretation"); *Metric Constructors*, 169 F.3d at 751.  Plaintiff's interpretation, conversely, does not "fall within a zone of reasonableness."  *Id.* (citation omitted). Nonetheless, out of an abundance of caution, and given the need to put this case to rest, the court will discuss the evidence cited by plaintiff, if for no other reason than to explain why it does not serve to contradict the terms of the RFP.

That extrinsic evidence falls into two main categories.  The first category comprises references in the acquisition strategies and source selection plan to the fact that the Navy intended to make a "single award" versus a "multiple award" IDIQ contract.  Thus, for example, the DONAS outline asked whether the "business arrangement anticipated" involved a "single

_____

[12]  *See Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 264 (2d Cir. 1987) ("[e]vidence of the parties' subjective intent" is admissible if a contract term is ambiguous); *United States v. Vahlco Corp.*, 720 F.2d 885, 891 (5th Cir. 1983) ("evidence of subjective intentions of the parties may be admitted to explain a contract that is susceptible to more than one reasonable interpretation"); *Sun Oil Co. v. Comm'r of Internal Revenue*, 562 F.2d 258, 262 (3d Cir. 1977), *cert. denied*, 436 U.S. 944 (1978) ("the subjective intent of the parties may be a consideration in interpreting an agreement where the documents are ambiguous or incomplete"); *Howell ex rel. D.H. v. District of Columbia*, 522 F. Supp. 2d 57, 63 n.4 (D.D.C. 2007); *see also* Joseph M. Perillo, Calamari & Perillo on Contracts 128-29 (6th ed. 2009) ("Extrinsic evidence is a very broad term . . . [that] includes . . . evidence of subjective intention . . . .").

[13]  Internal agency documents, such as a source selection plan, of course, do not by themselves establish legally-enforceable rights.  *See Allied Tech. Group, Inc. v. United States*, 94 Fed. Cl. 16, 41 (2010) (citing cases); *ManTech Telecomms.*, 49 Fed. Cl. at 67 n.15.

contract or multiple award task order contract," to which the CO responded that "[t]he RFP will indicate the Government's intent to make a single award."  At other spots in these documents, the CO checked boxes indicating that the intended contract was a "Single-Award IDIQ" versus a "Multiple-Award Indefinite Delivery Indefinite-Quantity."  As defendant points out, however, these comments do not reflect an intent to issue a single contract, but rather show only that the Navy did not intend more than one contractor to compete for task orders under any given IDIQ contract.  Indeed, the relevant portions of this documentation appear to have been generated in response to FAR § 16.504, which involves indefinite-quantity contracts.  That section indicates that "the contracting officer must, to the maximum extent practicable, give preference to making multiple awards of indefinite-quantity contracts under a single solicitation for the same or similar supplies or services to two or more sources."  FAR § 16.504(c)(1).  And it further provides that "[t]he contracting officer must document the decision whether or not to use multiple in the acquisition plan or contract file."  FAR 16.504(c)(1)(ii)(C).  These regulations make clear that the references quoted above have little, if anything, to do with the issue at hand. [14]

        The second category of extrinsic evidence relied upon by plaintiff involves various statements made by the CO indicating that the Navy intended to issue a single contract.  For example, the PSS prepared by the CO on April 8, 2010, stated that "[t]he Government will award a contract for Husbanding Services – Philippines to the responsible offeror whose offer submits the lowest price, technically acceptable offer with acceptable or neutral past performance."  In describing how offers will be evaluated, this document indicated that "[t]echnically acceptable proposals with acceptable or neutral past performance will have the price portion of the proposal evaluated with the proposed contract being awarded to the lowest price (all items/all lots) proposal."  In a similar vein, the SSP prepared by the CO on April 29, 2010, stated that "[t]he Government will award one contract for husbanding services in Philippines. . . . to the responsible offeror who submits the lowest price, technically acceptable offer with acceptable or neutral past performance."  (Emphasis added).  These statements suggest that, at the time they were written, the CO intended to make an award of a single contract.  But that is a far cry from saying that the RFP, as drafted and issued, only accommodated a single award and did not accommodate the alternative possibility of there being multiple contracts.  And if – as the foregoing discussion reveals – the RFP gave the agency the option to award multiple contracts, nothing in these presolicitation documents, which were not distributed to the offerors, could take that option away, nor prevent the Navy from deciding, albeit later on, that a split award was its most advantageous option.

        In short, plaintiff's extrinsic evidence proves unpersuasive.  It cannot alter what is conveyed by the language found in the RFP which, when read in context, marks a trail leading to the conclusion that the Navy had the option of awarding multiple contracts.  Accordingly, the split awards made by the Navy here did not violate the terms of the RFP.

---

        [14]  One commentator has noted the confusion created by the IDIQ regulation's use of the phrase "multiple awards," asserting that a better reference would be to "parallel awards."  1 Steven W. Feldman, Government Contract Awards: Negotiation & Sealed Bidding § 6.23 n.2 (2010).

### III.    CONCLUSION

Having considered, and rejected, the remainder of plaintiff's points, this court need go no further.  Could the RFP have been drafted more clearly?  Probably.  Hindsight, of course, advises that any procurement document might have been drafted so that no shred of doubt remained as to what later proved to be a disputed point.  But, this court is no blue-penciler, destined to pass upon an agency's drafting skills – in this matter, as in others, "the court is not empowered to substitute its judgment for that of the agency."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Measured by the appropriate standard of review, the Navy's split award decision here is not arbitrary, capricious or otherwise contrary to law.  The relief requested by plaintiff, hence, is not appropriately granted.

In consideration of the above:

1.      Plaintiff's motion for judgment on the administrative record is **DENIED** and defendant's cross-motion for judgment on the administrative record is **GRANTED**.

2.      The court intends to unseal and publish this opinion after March 1, 2011.  On or before February 28, 2011, each party shall file proposed redactions to this opinion, with specific reasons therefor.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge